## IN THE U.S. DISTRICT COURT OF DISTRICT OF COLUMBIA

| | |
|---|---|
| **SASHAY ALLEN-BROWN**<br>**5301 62nd Ave.**<br>**Riverdale, MD 20737**<br>           **Plaintiff**<br><br>**v.**<br><br>**THE DISTRICT OF COLUMBIA**<br>**Office of the Attorney General**<br>**Attn:  Tanya Robinson**<br>**441 4th St., N.W., Suite 1100 South**<br>**Washington, DC 20001**<br>           **Defendant,**<br><br>**And**<br><br>**The Metropolitan Police Department**<br>**300 Indiana Avenue, NW, Room 5059,**<br>**Washington , DC 20001** | **Case No. 13-1341**<br><br><br>          **JURY DEMAND** |

### COMPLAINT

COMES NOW Plaintiff Officer Sashay Allen-Brown ("Allen-Brown" or "Officer Allen-Brown"), by and through her undersigned attorneys and files this Complaint against the District of Columbia ("District")  and its Metropolitan Police Department ("MPD").  The Complaint is a result of discrimination suffered by Officer Allen-Brown based on her gender, the retaliation she suffered as a result of engaging in a protected activity, and the failure of the MPD to provide appropriate facilities for lactating mothers as required by D.C. statute.

### BACKGROUND

1.      Officer Allen-Brown has served the District of Columbia as a police officer since 2006.  When her son was born in 2011, Officer Allen-Brown made the decision to breastfeed him, a decision supported by science and, supposedly, by the District.

1

Lactation, however, is incompatible with bullet-proof vests.  Officer Brown asked that she receive the same treatment as male officers who cannot wear a vest for a limited period of time and that she be given an office job.  Initially, MPD agreed.  Then, after Officer Allen-Brown complained about the condition of the facilities for expressing milk, MPD changed its position.  Officer Allen-Brown was told she would have to return to the field, and wear her bullet-proof vest, or take leave without pay for the duration of the nine months she continued to breast feed.

## PARTIES

2.      Officer Sashay Allen-Brown is a police officer with the Metropolitan Police Department who resides 5301 62nd Ave., Riverdale, MD 20737.

3.      The District of Columbia government, and its Metropolitan Police Department are persons within the meaning of and employers within the meaning of USC and DC ST 42 USCA§ 2000e(b)

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over claims in this case under 28 USC §1331 (federal question), §1332 (diversity), §1343 (civil rights), and §1367 (supplemental) because the claims arise under the First Amendment to the United States Constitution and under Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978, as amended, 42 USC §2000e et seq. It has jurisdiction over claims under the DC code, including both the DCHRA and DC ST 2-1401.01 et seq and 2-1401.05 in particular. This Court also has jurisdiction over violations by the District of Columbia pursuant to 42 USC 1981 and 1983.

5.      Venue is proper in this Court because all the Defendants are residents of the District of Columbia and all the actions complained of occurred here.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      On December 11, 2006, Ms. Sashay Allen-Brown became a police officer employed by the Metropolitan Police Department.

7.      Officer Allen-Brown was, and is, a patrol officer.

8.      While on patrol, police officers are required to wear a bullet-proof vest.

9.      To be effective, the bullet-proof vest must be worn tightly.

10.      In March 2011, Officer Allen-Brown was blessed with the birth of a son.

11.      In conjunction with the birth of her son, Officer Allen-Brown took maternity leave for twelve weeks, beginning on March 7, 2011.

12.      Officer Allen-Brown made the decision to breast feed her son for the first twelve months of his life.

13.      This decision led to two important facts.  First, Officer Allen-Brown was lactating when she returned to work following her maternity leave.  Second, Officer Allen- Brown required a safe and clean place to express breast milk while she was on duty.

14.      On May 2, 2011, Officer Allen-Brown returned to work from maternity leave.

15.      At the time Officer  Allen-Brown returned to work she was assigned to Limited Duty.

16.      Correctly wearing a bullet-proof vest is incompatible with lactation since it causes pain to the breastfeeding mother and can lead to blocked ducts and infection.

17.      Initially, Officer Allen-Brown was assigned to a job that allowed her to work indoors and did not require that she wear a bullet-proof vest.

18.     The locations MPD made available for expressing milk were unsanitary and inappropriate.  In one case, Officer Allen-Brown was required to use an office and paper was taped to the window.  In another instance, she was assigned to a location that had no private space that was accessible.  In another, the space was part of the ladies' restroom and was used as a lounge area by other employees.

19.     Officer Allen-Brown complained about the conditions of these facilities and requested that the MPD provide safe, sanitary, and private facilities for expressing milk. *See*, for example Exhibit D.

20.     Shortly thereafter, Officer Allen-Brown's limited duty status was revoked and she was involuntarily placed on sick leave.

21.     Shortly thereafter, MPD converted Officer Allen-Brown's sick leave to leave without pay.

22.     For the remainder of the time Officer Allen-Brown was breastfeeding, she was not allowed to return to work.

23.     The Fraternal Order of Police filed a Step I and a Step II grievance regarding the unfair and discriminatory treatment of Officer Allen-Brown.  Both grievances were denied.  *See*, Exhibit A.

24.     Officer Allen-Brown filed a charge with the EEOC regarding her treatment.  She received a right-to-sue letter from the EEOC dated June 10, 2013.  *See*, Exhibit B.

25.     In its response to the EEOC investigation, Nicole Webster, on behalf of MPD, agreed that "…limited duty is a temporary status for members who are not able to perform the full range of police duties because of an injury/illness or other temporary medical disability."  *See*, Exhibit C.

26.     Ms. Webster, in the same response said that "in the past year, there were ….[no]

complaints about the cleanliness of the [Lactation] room…."  Attached as Exhibit D an

email that was sent from Officer Brown to the Lactation Coordinator.  Either Ms.

Webster did not in fact investigate this matter or she deliberately misrepresented the

facts, which is not especially surprising given that the District had to be asked twice by

the EEOC to respond to the charges.

27.     Among the policies Ms. Webster attached to her response to the EEOC is the

MPD policy regarding uniforms, GO-PER-110.11.  On page 7 of that policy document,

paragraph 15.d. states "Uniformed members assigned to administrative duties shall not be

required to wear the soft-body armor."  Clearly there are positions within MPD for

officers that do not require the wearing of a bullet-proof vest.  *See*, Exhibit E.

28.     MPD refused to assign Officer Brown to a position with administrative duties, as

provided in GO-PER-110.1, where she would not be required to wear a bullet-proof vest

for the time she was lactating.

29.     Paragraph 15.h. of the same GO-PER-110.11 states:  "Female police officers

experiencing difficulty wearing the soft body armor, due to pregnancy, shall request a

medical certificate, recommending placement on limited duty, from their private doctor.

The Director, Medical Services Division, *shall* place the member in a limited duty

status."  [emphasis added]

30.     Although MPD explicitly requires limited duty for officers who cannot wear the

soft body armor due to pregnancy, MPD refused to provide Officer Allen-Brown with

such a position.

31.     As a direct result of MPD's actions, Ms. Allen-Brown has suffered damages including lost wages and benefits, as well as other expenses.

**COUNT ONE**
**VIOLATION OF TITLE VII**
Gender Discrimination and Pregnancy Discrimination

32.     Allen-Brown realleges and incorporates by reference each of the allegations in paragraphs 1-31.

33.     Officer Allen-Brown is a woman, a protected class under Title VII.

34.     Officer Allen-Brown was a MPD officer at the time of these incidents and remains an officer to this date.

35.     District of Columbia Code 5-632(a) provides:

(a) If the Director, in consultation with Police and Fire Clinic physicians, determines that a member, because of injury or other temporary medical disability, is unable to perform the full range of duties, but is capable of effectively performing certain types of work within the department, and the prognosis is that the member will be able to perform a full range of duties after achieving maximum medical improvement, the Director may recommend to the Chief that the member perform work in a limited-duty status.

36.     Upon her return from maternity leave, Officer Allen-Brown was initially assigned a limited-duty position.

37.     On June 12, 2011, Office Allen-Brown requested an assignment at the station specifically because she could not wear her bullet proof vest.  Her request was denied. *See*, Exhibit F.

38.     On June 23, 2011, after she complained about the condition of the lactation rooms, Officer Allen-Brown was sent to the Police and Fire Clinic.  At that time she was approved for Limited-Duty status in an authorization signed by Dr. Rangamani Murthy. Her only limitation, as stated by Dr. Murthy, was that Officer Brown was not to wear her protective vest.  *See*, Exhibit G.

39.     On June 24, William Sarvis, Jr, Director of the Medical Services Branch, rescinded that approval.  He required that Officer Allen-Brown immediately be placed on sick leave and remain away from the MPD, with or without pay, until she was no longer breastfeeding. *See,* Exhibit H.

40.     Officer Allen-Brown was forced to take almost nine months of unpaid leave while she breastfed her son.

41.     Officer Allen-Brown was treated differently than male colleagues who have limitations that make it impossible for them to work in a patrol function for a limited amount of time.

42.     As a direct result of MPD's discriminatory actions, Officer Allen-Brown lost significant salary and benefits during the time she was forced to take leave without pay.

**COUNT TWO**
**VIOLATION OF TITLE VII**
Retaliation

43.     Allen-Brown realleges and incorporates by reference each of the allegations in paragraphs 1-42.

44.     When Officer Allen-Brown first returned from maternity leave, she was assigned to an office job.

45.     During the course of this assignment, Officer Allen-Brown was forced to use facilities for expressing milk that were unsanitary and not private.

46.     After raising a concern about the quality of the facilities for expressing milk, Officer Brown was told to report to the Police and Fire clinic for a determination of her fitness for duty.

47.     Dr. Murthy, at the clinic, determined that Officer Allen-Brown was fit for limited work with her only limitation being that she could not wear a bullet-proof vest.  *See*, Exhibit G.

48.     The very next day, William Sarvis, Jr., Director of the Medical Services Branch, rejected the clinic's finding and ordered Officer Allen-Brown to take sick leave or leave without pay until she was no longer breastfeeding.  *See*, Exhibit H.

49.     This action was a direct result of the complaints that Officer Allen-Brown made about the condition of MPD's facilities for lactating mothers.

50.     These complaints focused on "… a practice made an unlawful employment practice under Title VII…", namely that breastfeeding officers were treated differently than other officers.

51.     MPD's actions requiring that Officer Allen-Brown take unpaid leave for speaking up about the conditions she suffered are retaliatory and violate Title VII.

## COUNT III
## FIRST AMENDMENT RETALIATION

52.     Allen-Brown realleges and incorporates by reference each of the allegations in paragraphs 1-51.

53.     Officer Allen-Brown raised her concerns about the conditions for breastfeeding mothers, both in terms of work assignments and facilities for expressing milk, both inside the MPD and in interviews with television and print media.

54.     The treatment of breastfeeding mothers in MPD is a matter of pubic concern.

55.     Officer Allen-Brown raised these concerns hoping that MPD would make better facilities available to breastfeeding mothers and that her value to the MPD would be recognized by giving her a limited duty assignment rather than forcing her to take unpaid leave.

56.     As a direct result of Officer Allen-Brown's speech, she was forced to take unpaid leave for almost nine months.

57.     As a direct result of the District's actions, Officer Allen-Brown lost salary and benefits during the time she was on involuntary leave.

## COUNT IV
## DISCRIMINATION UNDER DC CODE 2-1401.01 et seq

58.     Allen-Brown realleges and incorporates by reference each of the allegations in paragraphs 1-57.

59.     The District of Columbia prohibits discrimination based on gender as well as discrimination based on family responsibilities.

60.     Officer Allen-Brown is a female and was the mother of a newborn baby at the time of the incidents at issue here.

61.     Unlike other male police officers who were given limited duty assignments when necessary, Officer Allen-Brown was denied a limited duty assignment.

62.     Further, MPD failed to provide adequate, sanitary, private facilities for expressing milk.

63.     Officer Allen-Brown was forced to take almost nine months of leave without pay because she chose to breastfeed her son.

## COUNT V
## VIOLATION OF THE DC BREASTFEEDING LAW

64.     Allen-Brown realleges and incorporates by reference each of the allegations in paragraphs 1-63.

65.     DC law requires:  An employer shall make reasonable efforts to provide a sanitary room or other location in close proximity to the work area, other than a bathroom or toilet stall, where an employee can express her breast milk in privacy and security. The location may include a childcare facility in close proximity to the employee's work location. DC Code 2-1402.82(d)(2)

66.     MPD did not provide privacy, security or sanitary locations for breastfeeding mothers to express milk.  Such failure continues to the present day.

67.     As a result of MPD's failure to comply with the statute, Officer Allen-Brown raised her concerns and was punished by being forced to take nine months of leave without pay.

## COUNT VI
## VIOLATIONS OF 42 USC 1981 AND 1983

68.     Allen-Brown realleges and incorporates by reference all the allegations in paragraphs 1-67.

69.     42 USC 1981 protects the rights of all persons to "make and enforce contracts" and encompasses employment discrimination and retaliation claims.

70.     MPD has a long-standing practice of providing substandard facilities to women who are lactating.

71.     MPD has a practice of requiring female officers who cannot wear a bullet proof vest to take unpaid time off rather than be assigned to limited duty status, contrary to the provisions of the collective bargaining agreement.

72.     After Officer Allen-Brown was interviewed by several media outlets, Chief Cathy Lanier was aware and became involved in Officer Allen-Brown's situation.

73.     Chief Lanier is the titular head of the Metropolitan Police Department.

74.     When the union filed a grievance on behalf of Officer Allen-Brown, various supervisory and management level officials within MPD were made aware of the situation but chose to do nothing to correct it.

75.     Each of the individuals involved in the grievance review, and most certainly Chief Lanier have "final policymaking authority" under DC law.

76.     The decisions in response to the union grievance and in response to Officer Allen-Brown's requests for limited duty status were decisions "officially promulgated by the District."

77.     The actions of the District in this case are clearly in violation of 42 USC 1981, as enforced through 42 USC 1983, since the District is a state actor and the actions taken by MPD were official acts of the District.

78.     As a direct result of the District's actions, Officer Allen-Brown has lost pay and benefits for the time she was forced to take leave without pay.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in an amount that will fully compensate her for the unpaid leave she was illegally forced to take, for her lost benefits, for her emotional harm, and for her attorneys' fees and costs.  Plaintiff further prays for a order

of this Court directing the Defendants to provide private, safe and sanitary rooms for lactating mothers at all metropolitan police stations and to adopt procedures to allow lactating mothers time to express milk..  Plaintiff further prays for such other relief as the Court considers just and appropriate.


Dated: September 5, 2013                                  Respectfully submitted,

                                                   _____/s/_____
                                                          Kathy Bailey
                                                     DC Bar No. 427407
                                                        Bailey Law pc.
                                                     805 15th St., NW
                                                          Suite 501
                                                  Washington D.C. 20005
                                                        202-862-8040
                                                     202 887 8044 (fax)
                                                  kbailey@baileylawpc.com

                                                  *Counsel for Sashay Allen-Brown*