# EXHIBIT C

**METROPOLITAN POLICE DEPARTMENT**
Internal Affairs Bureau
Diversity & Equal Employment Opportunity Compliance Branch

Carol M. Allen
Intake Specialist
U.S. Equal Employment Opportunity Commission
Washington Field Office
131 M Street, N.E.
Suite 4NW02F
Washington, D.C. 20507

RE: <u>Notice of Charge of Discrimination filed by Sashay L. Allen-Brown</u>
**EEOC Charge No. 570-2011-01849**

Dear Investigator Allen,

This Position Statement is filed on behalf of the Respondent, the District of Columbia Metropolitan Police Department (MPD) (hereafter "Respondent" and "Department"); in response to the complaint in the above-captioned charge of Discrimination.

## Statement of Position

### Historical Background

One of the ten largest local police agencies in the United States, the MPD is the primary law enforcement agency for the District of Columbia. Founded in 1861, the MPD of today is on the forefront of technological crime fighting advances, from highly developed advances in evidence analysis to state-of the-art-information technology. These modern techniques are combined with a contemporary community policing philosophy, referred to as Customized Community Policing. Community policing bonds the police and residents in a working partnership designed to organize and mobilize residents, merchants and professionals to improve the quality of life for all who live, work, and visit the Nation's Capital.

### Complainant's Allegations

Sashay L. Allen-Brown (hereafter "Complainant" and "Charging Party") states that she was hired as a Police Officer in December 2006. She asserts that she has been discriminated against by being denied limited duty, placed on leave without pay because of her sex (female), condition (pregnancy), perceived disability and in retaliation for complaining about inadequate lactation rooms. Charging Party believes MPD has violated Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended (ADA). **(Attachment No. 1)**

### Department's Response

Respondent denies discriminating against Charging Party in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as Amended (ADA). The Respondent acknowledges that it required Charging Party to

**METROPOLITAN POLICE DEPARTMENT**
Internal Affairs Bureau
Diversity & Equal Employment Opportunity Compliance Branch

wear the protective vest to maximize her safety while performing the essential functions of a MPD police officer.

### Denial of Limited Duty

The Department's investigation revealed that on Tuesday, May 3, 2011, Charging Party returned to work from maternity leave in a full duty status based on her request to the Police and Fire Clinic (PFC).

On Thursday, June 23, 2011, Charging Party informed the PFC that she could no longer wear the protective vest because she felt the constraint would hinder her milk supply. As a result, Charging Party was placed in a limited duty status until Tuesday, April 17, 2012, (eleven months later).

On Tuesday, April 17, 2012, Charging Party returned to the PFC with a note provided by her Primary Care Physician stating that she could return to full duty and wear her protective duty vest as required. Charging Party did this on her own volition. Accordingly, Charging Party was returned to a full duty status.

### Disparate Treament

Charging Party indicated that she was treated less favorable than male co-workers, in that she was mandated to wear her protective vest even though she was breast-feeding her child and planned to do so for a year. In the Charge of Discrimination, Charging Party acknowledged that the Department has a gender- neutral policy regarding wearing the protective vest.

Pursuant to General Order 110.11, Uniforms and Equipment, Part V, Number 15, a. and h., which states in part, " Members the rank of Sergeant and below, while in uniform and assigned to patrol street duties shall wear their Department issued soft body armor under the uniform shirt unless a medical waiver is provider." Additionally, "Female police officers, who are pregnant, shall not be exempt from the wearing of the soft-body armor while in uniform. Female officers experiencing difficulty wearing the soft-body armor, due to pregnancy, shall request a medical certificate recommending placement on limited duty from their private doctor. The Director of Medical Services Division shall place the member in a limited duty status." **(Attachment No. 2)**

It is the Policy of the Metropolitan Police Department to meet the Occupational Health needs of its members by ensuring that members who sustain occupational injuries and illnesses receive quality health care, and continue to receive income, consistent with Omnibus Act, while recovering from duty related injury and/or illness. In addition, The Police and Fire Clinic shall monitor members' non-performance of duty injuries and illnesses. The purpose is to determine members' duty status and their ability to participate in the Limited Duty Program.

Limited duty is a temporary status for members who are not able to perform the full range of police duties because of an injury/illness or other temporary medical disability,

**METROPOLITAN POLICE DEPARTMENT**
Internal Affairs Bureau
Diversity & Equal Employment Opportunity Compliance Branch

but are certified by the Chief Physician as being capable of effectively performing certain types of work.

The Department, as a law enforcement agency, has a single duty status for its sworn members: an officer in full duty status must be able to currently perform the full range of duties expected by a police officer, regardless of their current assignment. Full range of police duties encompasses a wide area of responsibilities- the principal responsibility being the ability to engage in patrol activities. It is the position of the Department that every member regardless of rank or assignment must have the ability to perform the full range of police duties, including but not limited to:

- Carrying weapons and taking police action when on duty.
- Be subject to call to duty status at all times.
- Take police action whenever in the District of Columbia, whether on or off duty.
- Be subject to transfers, assignment to temporary details and shift work.
- Perform such physical activities related to police work as climbing, jumping, lifting, prolonged walking, and prolonged standing, riding in vehicles, running and use of force to make or maintain an arrest. (**Attachment No. 3**)

While members may be currently assigned to positions other than patrol, every member must be able to be deployed in a patrol capacity to respond to emergencies or other situations that call for the full deployment of law enforcement personnel. As such, members returning to full duty must demonstrate their ability to perform all of the essential functions of a sworn member including patrol. The Department position is consistent with Title V of the ADA which requires that an accommodation given to a person with a qualified disability must enable the person to perform all the essential functions of a job.

### Leave Without Pay

On Thursday, February 10, 2011, Charging Party submitted a Police Department Form 654 (Request for Advanced Leave or Leave Without Pay) and was granted 160 hours of advanced leave and 49 hours of Leave Without Pay. In addition, Charging Party submitted a Request for Family/Medical Leave which was approved and granted for medical leave. (**Attachment No. 4**)

Pursuant to General Order 206.02, Granting of Advanced Annual or Sick Leave and Leave Without Pay, Part I, Section B, Number 1 and Section C, Number 1, which reads in part: "Advanced sick leave may be granted when all accumulated sick leave has been exhausted and the total amount of requested advanced sick leave does not exceed 240 hours, or when the member has a serious disability and/or illness which is not duty related." Further, "Leave without pay may be granted when all accumulated leave annual and/or sick, has been exhausted in instances of illness, injury, emergency, education, maternity, etc." (**Attachment No. 5**)

As a result, the Department complied with Charging Party's request based on her leave calculation.

**METROPOLITAN POLICE DEPARTMENT**
Internal Affairs Bureau
Diversity & Equal Employment Opportunity Compliance Branch

### *Retaliation*

Charging Party contends that she was subjected to retaliation when she complained about the substandard conditions in the so-called designated "Lactation Rooms". An inspection of the Second District's Lactating Room and log book revealed that in the past year, there were no requests to use the Lactating Room or any complaints about the cleanliness of the room according to the Lactation Coordinator at the second District. Without any specific examples or additional information, the statement is too broad to give an accurate response.

It is the policy of the Department to make reasonable efforts to provide a private, sanitary room in close proximity to a member's work area, where a member can express breast milk privately and securely. **(Attachment No. 6)**

### *Disability*

The ADA prohibits discrimination against "qualified individuals with disabilities." A qualified individual with a disability is one who "meets the skill, experience, education, and other job-related requirements of a position held or desired, and who, with or without reasonable accommodation, can perform the essential functions of a job."

The statute defines disability as a physical or mental impairment that substantially limits one or more of the major life activities; a record of such an impairment; or, being regarded as having such an impairment. 42 U.S.C. § 12102(2). The EEOC regulations interpreting the ADA define a physical or mental impairment as a "physiological disorder, or condition" that affects one of the major "body systems." 29 C.F.R. § 1630.2(h)(1).

To qualify as disabled under the ADA, the relevant impairment must "substantially limit one or more of the major life activities," such as working. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630(i). The EEOC regulations define "substantially limited in the major life activity of working" as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

The Department's limited duty program permits police officers temporarily incapacitated due to injury or illness to perform productive, though non-essential, work while they receive appropriate medical attention to restore them to full duty status, i.e., perform patrol services. The length of time each police officer remains on limited duty is dependent on the length of time needed to reach maximum medical improvement and resume full duty status. The limited duty program is temporary in nature and is not an alternative to full duty status. Therefore, Respondent does not have permanent limited duty positions for law enforcement personnel. When PFC determines that an injury or illness will act as a permanent bar to the police officer resuming full duty, that police officer is processed for retirement.

## METROPOLITAN POLICE DEPARTMENT
Internal Affairs Bureau
Diversity & Equal Employment Opportunity Compliance Branch

### Policies

MPD has an Equal Employment Opportunity Policy that states that it is committed to providing a workplace free of demeaning, derogatory, or abusive language, actions, and gestures relating to a person's race, color, national origin, sex/gender, age, religion, disability, sexual orientation, language harassment, discrimination, or retaliation. Department senior command officials, managers, and supervisors shall ensure that all employees are treated according to these guidelines. Every employee of the Department, sworn and civilian, regardless of rank, title or position, shall be held responsible for the contents of this Directive. **(Attachment No. 7)**

Employment discrimination is prohibited by the D.C. Human Rights Act of 1977, as well as Title VII of the Civil Rights Act of 1964, and Title VI of the Omnibus Safe Streets Act, as amended. The Department employees are reminded that equal employment is the law. As an employer, the

Department has the responsibility for preventing discrimination in the workplace. Conduct of this nature is prohibited, even if the conduct is not specifically intended to be offensive to anyone, and the member to whom it is directed is not personally offended by the conduct.

The Department has a *Retaliation policy* that is governed by its EEO policy that states employees of the Respondent shall not be subjected to any form of retaliation, disciplinary or corrective action, transfers, or changes in assignment solely because the employee opposed what he/she believed to be an unlawful employment practice or made a change, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII and the D.C. Human Rights Act. An employee is protected against retaliation for his/her opposition to discrimination, as long as the employee has a reasonable and "good faith" belief that the employer's conduct is illegal, even if it turns out that the employee was mistaken as to the legally of the employer's conduct.

### Conclusion

Charging Party at all times has been treated in a non-discriminatory manner. The Department followed the appropriate measures and acted properly. Accordingly, the Department denies that Charging Party was discriminated against in the terms, conditions, and privileges of sex (female), condition (pregnancy), perceived disability and in retaliation for complaining about inadequate lactation rooms in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended (ADA).

If additional information is needed, please contact me at (202)727-0066 or nicole.webster-rogers@dc.gov.

Sincerely,

Nicole Webster
Investigator
Diversity and EEO Compliance Unit