# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| SASHAY ALLEN-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1341 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Sashay Allen-Brown, a police officer with the District of Columbia Metropolitan Police Department ("MPD"), filed this action against defendants District of Columbia and MPD, seeking damages, attorney's fees and costs, and equitable relief for six counts of gender discrimination, pregnancy discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (2012) (Counts I and II), the First Amendment (Count III), the D.C. Human Rights Act of 1977, D.C. Code § 2-1401.01 *et seq.* (2012) (Count IV), D.C. breastfeeding protection laws, D.C. Code § 2-1402.82(d)(2) (2012) (Count V), and 42 U.S.C. § 1981 (Count VI). Defendants moved to dismiss, arguing that MPD is *non sui juris* and is therefore not a proper defendant. Defendants also moved to dismiss plaintiff's First Amendment retaliation claim (Count III) and section 1981 discrimination and retaliation claim (Count VI) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

1   Defendants initially moved to dismiss Counts III, IV, V, and VI. Mot. to Dismiss at 8–10 [Dkt. # 9]. They subsequently withdrew their motion with respect to Counts IV and V. Defs.' Reply to Pl.'s Opp. to Mot. to Dismiss ("Defs.' Reply") at 5–6 [Dkt. # 13].

The Court will grant defendants' motion in its entirety.  Plaintiff concedes that defendant MPD is *non suis juris* and must be dismissed.  Additionally, applying *Monell v. Department of Social Services of New York*, 436 U.S. 658, 658 (1978), the Court finds that plaintiff has failed to allege sufficient facts to establish municipal liability under section 1983 for plaintiff's First Amendment retaliation claim.  Finally, the Court finds that section 1981 cannot be the vehicle for redress of plaintiff's gender and pregnancy discrimination and retaliation claims.  But this was only a partial motion to dismiss, and the other claims against the District will move forward.

## BACKGROUND

The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion.

Plaintiff Sashay Allen-Brown has served as a MPD police officer since 2006.  Compl. ¶ 1 [Dkt. # 1].  As a patrol officer, she is required to wear a bullet-proof vest while on duty.  *Id.* ¶ 8.  Plaintiff gave birth to a son in March 2011 and decided to breastfeed him for the first year of his life.  *Id.* ¶¶ 11–12.  When plaintiff returned to work after twelve weeks of maternity leave, she was still breastfeeding and lactating and required a place to express breast milk while on duty.  *Id.* ¶¶ 13–14.  The lactation rooms available to plaintiff were, in her view, "unsanitary and inappropriate."  *Id.* ¶ 18.  They included offices, semi-public areas, and part of a restroom "used as a lounge by other employees."  *Id.*  Plaintiff also stated that she was unable to wear a bullet-proof vest when she returned to work because doing so was "incompatible with lactation since it cause[d] pain to the breastfeeding mother and [could] lead to blocked ducts and infection."  *Id.* ¶ 16.

Plaintiff, troubled by the condition of the lactation facilities, raised her concerns in an email to her supervisor in June 2011.  *See* Ex. D to Compl. [Dkt. # 1-7].  On June 23, 2011,

shortly after plaintiff emailed her supervisor, she was directed to visit the Police and Fire Clinic and submit to a "fitness for duty" evaluation.  Compl. ¶ 46; *see also* Ex. G to Compl. [Dkt. # 1-10].  Following her exam, plaintiff was placed on "Limited-Duty status" based on the medical officer's conclusion that she was unable to wear a bullet-proof vest while breastfeeding.  Compl. ¶ 38; Ex. G to Compl.

The following day, Medical Services Branch Director William Sarvis, Jr., who works within the Human Resource Management Division of MPD's Professional Development Bureau, removed plaintiff from limited duty status and placed her on involuntary sick leave.  Compl. ¶ 39; Ex. H to Compl. [Dkt. # 1-11].  After her sick leave expired, plaintiff was placed on "leave without pay" for approximately nine months, which was the remainder of the time she was breastfeeding.  Compl. ¶¶ 21–22, 40.  Plaintiff has since returned to work.  *Id.* ¶ 34.

Soon after plaintiff was placed on involuntary sick leave, the Fraternal Order of Police filed two grievances with MPD on plaintiff's behalf.  *Id.* ¶ 23; *see also* Ex. A to Compl. at 2, 8 [Dkt. # 1-4].  Both grievances were denied, leading plaintiff to file a complaint with the United States Equal Employment Opportunity Commission ("EEOC").  Compl. ¶¶ 23–24.  After an EEOC investigation, plaintiff was sent a "right-to-sue" letter dated June 10, 2013.  *Id.* ¶ 24; Ex. B to Compl. [Dkt. # 1-5].

Plaintiff then filed suit in this Court, claiming that defendants violated her rights by discriminating and retaliating against her in violation of Title VII, retaliating against her for engaging in speech protected by the First Amendment, discriminating against her in violation of the D.C. Human Rights Act, failing to adhere to the District's breastfeeding protection laws, and discriminating and retaliating against her in violation of her right to contract as protected by section 1981.  These claims stem from the allegations that MPD:  provided substandard lactation

facilities; refused to assign plaintiff to limited duty and provide her with an alternative work assignment when she was unable wear a bullet-proof vest; placed plaintiff on unpaid leave during the time she was breastfeeding; and retaliated against plaintiff for speaking out about the poor condition of the lactation rooms.  *See* Compl. ¶¶ 1–78.  Defendants have moved to dismiss MPD as a named defendant and to dismiss Counts III and VI for failure to state a claim.  Mot. to Dismiss at 1–2  [Dkt. # 9].

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*., quoting *Twombly*, 550 U.S. at 566. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## ANALYSIS

**I.     The Court will dismiss defendant MPD because it does not have the capacity to sue or be sued under D.C. law.**

Plaintiff named both the District of Columbia and MPD as defendants in this case. Compl. ¶ 3. Defendants moved to dismiss defendant MPD, arguing the department is *non sui juris*. Mot. to Dismiss at 4, citing *Hinton v. Metro. Police Dep't, Fifth Dist.*, 726 F. Supp. 875, 875 (D.D.C. 1989). Plaintiff conceded that MPD is not a proper defendant and explained that she named MPD as a defendant to ensure that the appropriate parties received notice of the suit. Pl.'s Opp. to Defs.' Mot. to Dismiss at 2 [Dkt. # 11] ("Pl.'s Opp."). But in light of the fact that notice has been provided at this stage in the litigation and the fact that defendant MPD cannot be sued, the Court will grant defendants' motion to dismiss MPD as a defendant.

II.   **The Court will dismiss the section 1983 claim against the District of Columbia in Count III because plaintiff has not alleged any facts to establish that that there is municipal liability under *Monell*.**

Count III of the complaint alleges that the District of Columbia retaliated against plaintiff for exercising her First Amendment free speech rights by revoking plaintiff's limited duty status and placing her on unpaid leave until she could wear a bullet-proof vest.  Compl. ¶¶ 52–57. Specifically, plaintiff asserts that the Director of MPD's Medical Services Branch denied her request for limited duty status and "required that [plaintiff] immediately be placed on sick leave and remain away from the MPD, with or without pay," in retaliation for plaintiff's internal and external statements about the poor conditions for breastfeeding mothers within the police department.  Compl. ¶¶ 39, 48, 53, 56; Pl.'s Opp. at 4.  While it is not entirely clear from the face of the complaint, plaintiff's opposition to the motion to dismiss explains that this count is grounded in 42 U.S.C. § 1983, and it is only asserted against the District of Columbia.  *See* Pl.'s Opp. at 4.

Defendants moved to dismiss Count III on the grounds that plaintiff did not plead that the Medical Director's alleged retaliatory denial of plaintiff's request for limited duty status was "the result of a [District of Columbia] policy or practice."  Mot. to Dismiss at 7–8.  As a result, defendants contend that the District cannot be held liable for the conduct of the Medical Director

because plaintiff did not establish municipal liability under *Monell*.[2]  Mot. to Dismiss at 7–8; *see also Monell*, 436 U.S. at 658.

In *Monell*, the Supreme Court held that local governments are not immune from liability under section 1983, but it explained that a "municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  The Supreme Court subsequently stated:  "while Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige

---

2      Defendants also argued that this count should be dismissed because plaintiff did not speak on a "matter of public concern" as required by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).  Defs.' Reply at 2–4.  The speech of public employees is protected by the First Amendment if the speech is on a matter of "public concern."  *See Pickering*, 391 U.S. at 568.  Matters of public concern are those that are "'of political, social, or other concern to the community'" or "'issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government.'"  *LeFande v. District of Columbia*, 613 F.3d 1155, 1159–61 (D.C. Cir. 2010), quoting *Hall v. Ford*, 856 F.2d 255, 259 (D.C. Cir. 1988).  The speech need not be expressed publically, and First Amendment protections are not "lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."  *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979).  Here, defendants argue that plaintiff's speech was not on a matter of public concern because it was about an "individualized personnel dispute[]."  Defs.' Reply at 2, citing *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984).  But "[t]he presence of a personal motivation for an employee's speech . . . need not destroy the character of a communication as one of public concern," *O'Donnell v. Barry*, 148 F.3d 1126, 1134 (D.C. Cir. 1998), and the D.C. Circuit has found statements about "discrimination on the part of a public agency [to be on a] matter of public concern."  *Tao v. Freeh*, 27 F.3d 635, 640 (D.C. Cir. 1994) (considering racial discrimination at the FBI).  The Court would therefore be inclined to find that plaintiff's statements were on a matter of public concern because they were on the topic of gender and pregnancy discrimination within MPD.  The Court need not reach that issue, though, because it finds that plaintiff nonetheless failed to state a section 1983 claim against the District for First Amendment retaliation.

municipalities to control the conduct of *others*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469,

479 (1986) (emphasis in original).  "The 'official policy' requirement was intended to distinguish

acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that

municipal liability is limited to action for which the municipality is actually responsible."  *Id.*

The D.C. Circuit has explained that:

> There are a number of ways in which a "policy" can be set by a
> municipality to cause it to be liable under § 1983: the explicit setting of a
> policy by the government that violates the Constitution . . . ; the action of a
> policy maker within the government . . . ; the adoption through a knowing
> failure to act by a policy maker of actions by his subordinates that are so
> consistent that they have become "custom" . . . ; or the failure of the
> government to respond to a need . . . in such a manner as to show
> "deliberate indifference" to the risk that not addressing the need will result
> in constitutional violations.

*Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).

Here, plaintiff did not plead sufficient facts to show that the constitutional violation

alleged in Count III – the Medical Director's alleged retaliation against plaintiff for exercising

her First Amendment rights – was caused by a policy or custom of the District.  In the absence of

these facts necessary to support municipal liability, Count III must be dismissed.

As an initial point, the complaint does not contain any allegations that the District

explicitly adopted a policy of retaliating against employees who engage in First Amendment

speech, and it does not assert that the District is deliberately indifferent to First Amendment

retaliatory conduct.  Instead, the only factual allegations concerning retaliation incorporated into

Count III of plaintiff's complaint involve the Medical Director's decision to deny plaintiff

limited duty status because she spoke out against MPD's allegedly insufficient lactation

facilities.  *See* Compl. ¶¶ 39–40, 48–49, 53–56.

It is true that in some cases municipal liability can attach where the conduct underlying the section 1983 claim was the product of "the action of a policy maker within the government." But here, plaintiff has not alleged facts that would establish that the retaliatory action was taken by a policy maker.

The Supreme Court narrowly interprets "policy makers" for the purposes of section 1983 liability, and discretion in a job function is not enough. *St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (O'Connor, J., plurality opinion) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."); *see also Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (applying *Praprotnik*).  Instead, an individual must "speak with final policymaking authority for the local governmental actor" as established by state law to qualify as a policy maker. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also Triplett*, 108 F.3d at 1453.  And courts in this district have held that a final policy maker "typically must be at least an agency head or the governing body of an agency." *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91 (D.D.C. 2011) (holding that an assistant fire chief was not a final policy maker); *see also Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011) (defining a narrow pool of policy makers as those who can "promulgate administrative rules" or those who have the "authority to make *final* policy").

Applying that framework here, the Court finds that Director Sarvis – the only individual mentioned in connection with Count III – is not a policy maker.  There is nothing in the record to indicate that he makes broad departmental policy decisions at all, and even with respect to individual determinations of eligibility for limited duty status, the Medical Director does not have the final word. *See Triplett*, 108 F.3d at 1453 (alteration in original), quoting *Jett*, 491 U.S.

at 737 ("The only acts that count (though they may include inaction giving rise to or endorsing a custom) are ones by a person or persons who have 'final policymaking authority [under] state law.'").  Instead, D.C. law provides that:

> If the [Medical] Director, in consultation with the Police and Fire Clinic physicians, determines that a member, because of . . . temporary medical disability, is unable to perform the full range of duties, but is capable of effectively performing certain types of work within the department . . . the Director *may recommend* to the Chief that the member perform work in a limited-duty status.

D.C. Code § 5-632(a) (2012) (emphasis added).

Moreover, Director Sarvis is not the head of an agency, and he must report through layers of management to reach the chief of police – the agency head for the police department.  *See* Ex. H to Compl. (noting the chain of command through which the Medical Services Branch reports).[3]   The Court therefore concludes that Director Sarvis is not a policy maker for the purposes of section 1983 liability, and that plaintiff failed to plead sufficient facts to establish *Monell* liability in this case.  Since plaintiff is merely seeking to hold the District vicariously responsible for the actions of its employee, the Court will grant defendants' motion to dismiss Count III.

## III.   The Court will dismiss Count VI because section 1981 cannot apply to cases of gender or pregnancy discrimination.

In Count VI, plaintiff alleges that defendants violated her contract rights protected by 42 U.S.C. § 1981 because defendants discriminated and retaliated against her on the basis of her gender and her lactation needs – i.e., that it failed to provide her with an alternate work

---

3       Although the universe of documents that the Court may consider is restricted at the motion to dismiss stage, the Court may refer to Director Sarvis' letter because it is included as an exhibit to the complaint.  *See United States v. Sci. Applications Int'l Corp.*, 502 F. Supp. 2d 75, 78 (D.D.C. 2007), quoting *Air Line Pilots Ass'n v. Delta Air Lines, Inc.*, 863 F.2d 87, 94 (D.C. Cir. 1988) ("'[T]he subject matter to which [the complaint] refers becomes a part of the incorporating document just as if it were set out in full.'").

assignment and placed her on unpaid leave when she was unable to wear the bullet-proof vest. Compl. ¶ 68–78; Pl.'s Opp. at 9–11.  Defendants moved to dismiss this count on the ground that section 1981 cannot serve as the vehicle for gender and pregnancy discrimination claims.  Defs.' Reply at 5.  The Court agrees.

Section 1981 provides that:

> All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  This section is regularly applied in the context of racial discrimination and retaliation.  But courts have declined to extend section 1981 into the context of gender discrimination.  *See Peart v. Latham & Watkins LLP*, No. 13-537 (RMC), 2013 WL 5745642, at *7 (D.D.C. Oct. 23, 2013) ("Section 1981 does not provide a cause of action for pregnancy or gender discrimination . . . [because, a]s is clear from the statute's language, § 1981 is limited to racial discrimination."); *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 219 (D.D.C. 2012) ("42 U.S.C. § 1981 is narrowly addressed to racial discrimination and is in no way directed to sex or gender discrimination."); *Maduforo v. Urban Serv. Sys. Corp.*, No. 09-0287 (JR), 2009 WL 2031869, at *1 (D.D.C. July 14, 2009) (dismissing one count of plaintiff's claim because "there is no cause of action under section 1981 for retaliation arising from gender discrimination").  The Court will follow these decisions.

As an initial point, the plain language of section 1981, "as is enjoyed by white citizens," supports the conclusion that it was not meant to encompass types of discrimination other than those based on race.  In fact, in *Saint Francis College v. Al-Khazraji*, the Supreme Court questioned whether section 1981 could even be used to assert a claim for discrimination on the

basis of national origin.  481 U.S. 604, 613 (1987); *see also Uzoukwo v. Metro. Wash. Council of Gov'ts*, No. 11-391 (RLW), 2014 WL 211937, at *2 (D.D.C. Jan. 21, 2014) (applying *Al-Khazraji* to limit national origin claims under section 1981 that lack an associated racial or ethnic claim).

Moreover, the Supreme Court has stated that section 1981 does not apply to gender discrimination.  In applying section 1981 to a case of racial discrimination at a private school, the Court clarified that it was not deciding "the right of a private school to limit its student body to boys [or] girls . . . [because] 42 U.S.C. § 1981 is in no way addressed to such categories of selectivity."  *Runyon v. McCrary*, 427 U.S. 160, 167 (1976).  And courts in this jurisdiction have cited *Runyon* in support of their holdings that section 1981 does not apply to gender or pregnancy discrimination.  *See Peart*, 2013 WL 5745642, at *7; *Bello*, 898 F. Supp. 2d at 219.

Here, plaintiff's section 1981 claim relates solely to issues of gender and pregnancy discrimination and Director Sarvis' allegedly retaliatory acts resulting from plaintiff's speech about that discrimination.  As a result, Count VI must be dismissed.

## CONCLUSION

For the above stated reasons, plaintiff has failed to state a claim upon which relief may be granted for violation of her rights under both the First Amendment, as enforced by 42 U.S.C. § 1983, and her rights under 42 U.S.C. § 1981.  The Court will therefore grant defendants' motion to dismiss Counts III and VI of plaintiff's complaint.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  July 7, 2014